**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:25-CV-00114-HBB**

**DAVID W.**[1]                                                                                      **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
**COMMISSIONER OF SOCIAL SECURITY**                                         **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

### I.      BACKGROUND

Before the Court is the Complaint (DN 1) of David W. ("Plaintiff") seeking judicial review

of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN

17, 18) and Defendant (DN 20) have filed a Fact and Law Summary.   For the reasons that follow,

the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered

December 4, 2025 (DN 11), the parties were notified that oral arguments would not be held unless

a written request therefore was filed and granted.   No such request was filed.

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

## II.   FINDINGS OF FACT

On April 25, 2022, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 27, 189-91, 194-202).   Plaintiff alleged that he became disabled on January 29, 2018, as a result of post-traumatic stress disorder ("PTSD") (Tr. 27, 80, 87, 251).   The application was denied initially on September 30, 2022, and upon reconsideration on December 5, 2022 (Tr. 79, 86).   On May 11, 2023, Plaintiff filed a written request for hearing (Tr. 106-07).

On December 27, 2023, Administrative Law Judge William Zuber ("ALJ") conducted a telephonic hearing (Tr. 27, 44).   Plaintiff and his counsel, Beth Matter, participated (*Id.*).   Eric Anderson, an impartial vocational expert, testified during the hearing (*Id.*).

In a decision dated May 23, 2024, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 27-37).   The ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024 (Tr. 29).   At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 29, 2018, the alleged onset date (*Id.*).   At the second step, the ALJ determined that Plaintiff has the following severe impairments:   degenerative joint disease of the left knee and obesity (*Id.*).   Relevant to Plaintiff's claim before the Court, the ALJ determined that Plaintiff's PTSD is a medically determinable impairment that does not cause more than minimal limitation in his ability to perform basic mental work activities and is therefore non-severe (Tr. 30-31).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. § 404.1576(b) (Tr. 32).   Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 35).

2

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well considered Grid Rule 202.21 (Tr. 36). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (*Id.*). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 29, 2018, through the date of the decision (*Id.*).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 185-88). The Appeals Council denied Plaintiff's request for review (Tr. 12-14).

### III.    CONCLUSIONS OF LAW

#### A.    Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 12-14). At that point, the ALJ's decision became the final decision of the

Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

### B.        The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits to persons with disabilities.   42 U.S.C. § 401 et seq. (Title II Disability Insurance Benefits).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 20 C.F.R. § 404.1505(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. § 404.1520.   In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the RFC to return to his or her past relevant work?

5)      Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v).   Here, the ALJ denied Plaintiff's claim at the fifth step.

**C.      Challenge to the RFC**

### 1.      *Arguments of the Parties*

At step two, the ALJ found that Plaintiff's PTSD is a medically determinable mental impairment that is nonsevere (Tr. 30).   Plaintiff argues the ALJ erred as a matter of law by failing to account for his mild mental limitations in the RFC and by failing to explain why such limitations were not included in the RFC (DN 18 PageID # 647-49, 651-52) (citing *Whittle v. Comm'r of Soc. Sec.*, No. 4:24-CV-62-JEM, 2025 WL 2738469, at *4 (E.D. Tenn. Sep. 25, 2025) (failing to explain how a claimant's mild mental limitations affect the RFC assessment may constitute reversible error where an ALJ makes no mention of the claimant's mental impairment in the RFC analysis); *Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752,767 (N.D. Ohio 2019) (same); *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017) (same)).[2]   Plaintiff contends the ALJ's failure to provide a more detailed analysis of his PTSD in conjunction with his RFC formulation prevents the Court from conducting a meaningful review (*Id.* at PageID # 649, 650-53) (citing SSR 96-8p; *Richardson v. Saul*, 511 F. Supp. 3d 791, 798-99 (E.D. Ky. 2021); *Johnson v. Comm'r of Soc. Sec.*, No. 3:20-CV-99, 2021 WL 5177818, at *3 (S.D. Ohio Nov. 8, 2021).   Plaintiff seeks a remand because the record is not adequately developed to ascertain whether the ALJ's omissions were harmless (*Id.* at PageID # 656-57).

---

2 In making this argument, Plaintiff acknowledges a finding by an ALJ that the claimant has mild limitations in one or more of the broad areas of mental functioning does not necessarily mean the claimant will have corresponding limitations with regard to his or her RFC (DN 18 PageID # 649) (citing *Shamsud-Din*, 2017 WL 3574694, at *6; *Ceol v. Berryhill*, No. 3:15-CV-315-CCS, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017)).

In response, Defendant asserts that the ALJ reasonably found that Plaintiff's non-severe PTSD did not result in any workplace limitations in the RFC assessment (DN 20 PageID # 664-671) (citing Tr. 29-35; *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020)). Further, Defendant contends that "Plaintiff's argument is based on a fundamental misunderstanding of the significance of the paragraph B findings and in determining the RFC" and whether the ALJ is required to specifically discuss each non-severe impairment in the RFC (*Id.*) (citing 20 C.F.R. §§ 404.1545(a)(2), 404.1545(e); SSR 98-6p, 1996 WL 374184, at *5 (July 2, 1996)).

### 2.    *Applicable Law*

At the second step in the sequential evaluation process the claimant must demonstrate he suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ." 20 C.F.R. § 404.1520(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his physical or mental ability to do "basic work activities." 20 C.F.R. § 404.1522(a). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability, regardless of age, education, and experience." *Higgs*, 880 F.2d at 862 (citing *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 (6th Cir. 1985)). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs."[3]    20 C.F.R. § 404.1522(b).

---

3  Examples of basic work activities are as follows:
    (1)    Physical functions such as walking, standing, sitting, lifting, pushing, reaching, carrying,

The determination whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria.    20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E.    They are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."    20 C.F.R. § 404.1520a(c)(3).    The four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme."    20 C.F.R. § 404.1520a(c)(4).    If the four areas of mental functioning are rated as "none" or "mild," the ALJ will generally conclude that the claimant's impairment is not "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.    20 C.F.R. § 404.1520a(d)(1).

The RFC finding is an ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.    20 C.F.R. §§ 404.1545(a), 404.1546(c).    ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.    20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).    Thus, in making the RFC determination ALJs must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations.    20 C.F.R. §§ 404.1520c, 404.1529(a).

---

or handling;
(2)    Capacities for seeing, hearing, and speaking;
(3)    Understanding, carrying out, and remembering simple instructions;
(4)    Use of judgment;
(5)    Responding appropriately to supervision, co-workers and usual work situations; and
(6)    Dealing with changes in a routine work setting.
20 C.F.R. § 404.1522(b).

7

### 3.    *Discussion*

In addressing Plaintiff's claim, the Court has reviewed the ALJ's decision holistically. *See Martinek v. Comm'r of Soc. Sec.*, No. 1:25-CV-01735-DAC, 2026 WL 1745689, at *7 (N.D. Ohio June 17, 2026) (citation modified) (reading ALJ's decision as a whole and with common sense); *Lisa R. v. O'Malley*, No. 3:23-CV-409-CRS-CHL, 2024 WL 4024506, at *5 (W.D. Ky. Sep. 3, 2024); *Carter v. Comm'r of Soc. Sec.*, No. 5:24-CV-00087-KKC, 2024 WL 5055830, at *3-4 (E.D. Ky. Dec. 10, 2024) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) (reading ALJ's decision holistically or as a whole).

At step two, the ALJ found that Plaintiff has the following medically determinable severe impairments:   degenerative joint disease of the left knee and obesity (Tr. 29).   Pertinent to Plaintiff's claim are the following paragraphs in the ALJ's decision:

> The claimant's medically determinable mental impairment of post-traumatic stress disorder ("PTSD"), while documented in treatment records, does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.
>
> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).   These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering, or applying information. In this area, the claimant has no limitation.   At the post-hearing mental consultative exam, the claimant exhibited an "above average" fund of information and strong recent auditory memory, with intellectual functioning exceeding 90% of individuals his age (5F/4-5).   During testing, the claimant functioned within a range consistent with that expected in basic reading, spelling, and arithmetic skills at the advanced college level (5F/7).
>
> The next functional area is interacting with others.   In this area, the claimant has mild limitation.   Although the claimant has related recent episodes of anger, depression, and anxiety, his January 2023 treatment notes indicate these are "mostly related" to "challenging new stepdaughters at home" (2F/10).   Similarly, although

the claimant relates difficulties being around people, he has reported occasional church attendance, visiting his father, and helping a friend to train animals (5E/5, 3F/2, 5F/3).   The claimant presented at his mental consultative exam with "friendly" affect and "good" eye contact while exhibiting adequate adaptive communication and socialization skills (5F/4, 6).   Moreover, in function reports, he denies issues with authority figures and reports that he has never lost a job due to getting along with others (5E/6).

The third functional area is concentrating, persisting, or maintaining pace.   In this area, the claimant has mild limitation.   Although the claimant relates difficulties in concentration and task completion, during consultative exam he exhibited no impairment in psychomotor coordination or visual organization (5E/6, 5F/7).   The examiner found that the claimant should have adequate abilities to sustain attention and perform repetitive tasks with no limitations in understanding, retaining, and following instructions (5F/7).

The fourth functional area is adapting or managing oneself.   In this area, the claimant also has mild limitation.   In function reports and exams, the claimant reports that he can perform certain activities of daily living ("ADLs") such as cleaning, paying bills and handling money, and taking care of animals (5E/4, 5F/3).   Significantly, the claimant has not undergone mental health treatment other than medication via his primary care provider; he has never been hospitalized for psychiatric treatment (5F/3).   Instead, treatment notes indicate that, after discontinuation of an initial recommendation of Zoloft due to undesirable side effects, a prescription medication regimen of Effexor produced better results with the claimant describing his symptoms as "much improved" in February 2023 (2F/6).

At the initial level, the State agency relied on the September 29, 2022, opinion of Mary K. Thompson, Ph.D. (2A).   Dr. Thompson opined that the evidence was not sufficient to establish the presence of an impairment or combination of impairments that would significantly limit the claimant's mental ability to perform basic work activities (2A/3).   Upon reconsideration, the State agency relied on the December 2, 2022, opinion of Rudolf Titjani, M.D. (4A).   Dr. Titjani found "lack of medical evidence" to evaluate the claimant's impairments (4A/3).

The undersigned finds these opinions only partially persuasive.   While the opinions do have some support in a lack of documentation of the claimant's impairments for a period of time, the record nonetheless contained treatment records that indicated PTSD as well as function reports from the claimant (2A/2, 4A/2).   In addition, the opinions appear inconsistent with more recent medical records that do reflect elevated scores on depression screening tools and prescribed medication that has controlled symptoms (2F/6).   In sum, while the undersigned does find that the claimant has a medically determinable mental impairment, the

9

undersigned also agrees with the State agency assessments in finding a lack of evidence to establish that the impairment significantly limits the claimant's mental abilities to perform basic work activities.

In addition, on March 14, 2023, the claimant attended a consultative exam with Ollie C. Dennis, Ed.D. (5F).    Dr. Dennis opined that the claimant had no limitations in the capacity to understand, retain, and follow instructions (5F/7).    In Dr. Dennis's opinion, the claimant's ability to sustain attention to perform repetitive tasks was "adequate" (5F/7).    Dr. Dennis further opined that the claimant "manifested adequate adaptive skills" and was generally able to relate to co-workers and to accept supervision with little difficulty (5F/7).    Finally, Dr. Dennis opined that the claimant's ability to tolerate the stress and pressure of daily work activity was "probably" adequate (5F/7).

The undersigned finds this opinion generally persuasive.    The opinion contains support in an extensive clinical interview, detailed exam observations, and results of assorted function tests.    For example, intelligence testing placed the claimant in the "high average" range (5F/7).    In addition, the opinion notes that the claimant has not undergone mental health treatment, been prescribed medication for mental health issues, or undergone psychiatric hospitalization (5F/3).    The opinion also appears consistent with treatment records which, while noting mental health symptoms, also reflects control of those symptoms with medication (Effexor) (2F/6).

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1)).

(Tr. 30-31).

Clearly, the ALJ conducted a thorough evaluation of Plaintiff's symptoms, signs, and laboratory findings in determining whether Plaintiff's PTSD is a medically determinable mental impairment (*Id.*).    *See* 20 C.F.R. § 404.1520a(b).    Furthermore, the ALJ provided a detailed explanation why he found no more than a mild limitation in each of the four areas of mental functioning (*Id.*).    *See* 20 C.F.R. § 404.1520a(c)-(d).    Notably, in the Sixth Circuit, the step two severity regulation codified at 20 C.F.R. § 404.1520(c) is "construed as a *de minimis* hurdle in the disability determination process."    *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).    "Under

the prevailing de minimis view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citing *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 (6th Cir. 1985)).   Consequently, at step two, the ALJ determined that Plaintiff's PTSD is not severe because it is a slight abnormality that minimally affects his work ability.   Substantial evidence in the record supports the ALJ's findings.

The ALJ then differentiated the above functional limitations from the mental RFC assessment, used at steps four and five, which requires a more detailed assessment (Tr. 31).   The ALJ indicated that the following RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" (Id.).

The ALJ determined that Plaintiff has the RFC to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 32).   This means that the ALJ did not include any mental limitations in Plaintiff's RFC.   As mentioned above, Plaintiff accuses the ALJ of failing to explain why he omitted mental limitations from his RFC (DN 18 PageID # 652).   But, in making the accusation, Plaintiff turns a blind eye to an important part of the ALJ's RFC analysis and fails to read the decision holistically.

Specifically, the ALJ found that Plaintiff's statements concerning "the intensity, persistence and limiting effects" of the symptoms caused by his "medically determinable impairments [degenerative joint disease of the left knee, obesity, and PTSD] are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 33).   The ALJ explained that "for an extended length of time during the period under consideration, there are no records documenting treatment for [Plaintiff's] physical or *mental impairments*" (Tr. 33)

(emphasis added).   Additionally, the ALJ noted that "at the hearing [Plaintiff] described *severe limitations in going out in public, tolerating loud noises, and interacting with others*" (*Id.*) (emphasis added).   But as the ALJ pointed out, "*available medical records somewhat contradict those descriptions*" (*Id.*) (emphasis added).   The ALJ substantiated his observation by providing two examples (Tr. 33-34).   First, the ALJ indicated that "[Plaintiff] displayed adequate adaptive skills in the areas of communication, daily living, and social skills during the consultative exam" (Tr. 33-34) (citing Ex. 5F/4, Tr. 583).   Specifically, the ALJ was referring to Dr. Dennis' objective observations during his consultative psychological examination of Plaintiff on March 14, 2024 (*Id.*) (*see* Tr. 583).   Next, the ALJ observed that "[d]uring more recent appointments after [Plaintiff's] initial visit to establish care with a provider in January 2023, he has presented without 'flat' or 'hyper' affect and no anxiety, depression, aggressive behavior, or 'new complaints' after a medication regimen of Effexor" (Tr. 34) (citing Ex. 2F/2, 5, 7-9, Tr. 514, 517, 519, 520-21).   Specifically, the ALJ was referring to objective observations in treatment records dated February 20, 20223, June 30, 2023, and October 2, 2023 (*Id.*) (*see* Tr. 513-14, 516-17, 518-19).   Thus, contrary to Plaintiff's assertion, the ALJ does discuss his PTSD in the RFC analysis.

As indicated in the block quoted paragraphs above, at step two the ALJ conducted persuasiveness evaluations of the prior administrative medical findings of Mary K. Thompson, Ph.D., and Rudolf Titjani, M.D. (*see* Tr 30-31).   While the ALJ determined that the opinions of Drs. Thompson and Titjani were only partially persuasive, the ALJ agreed with their finding "[a] lack of evidence to establish that the impairment significantly limits [Plaintiff's] mental abilities to perform basis work activities" (Tr. 31).

Additionally, at step two, the ALJ conducted a persuasiveness evaluation of the

consultative psychological opinion of Dr. Dennis (Tr. 31).    Notably, Dr. Dennis' opinion expresses a more detailed assessment of Plaintiff's ability to perform work activities than the ALJ's "paragraph B" findings (*Compare* Tr. 30-31 *with* Tr. 586).    Specifically, Dr. Dennis opined that Plaintiff had no limitation in his capacity to understand, retain, and follow instructions; had an adequate ability to sustain attention to perform repetitive tasks; had manifested adequate adaptive skills; was generally able to relate to co-workers and accept supervision with little difficulty; and had probably adequate ability to tolerate the stress and pressure of daily work activity (Tr. 586).    The ALJ found Dr. Dennis' opinion "generally persuasive" (Tr. 31).    The Court notes while Dr. Dennis' opinion expresses a more detailed assessment of Plaintiff's ability to perform work activities, it is consistent with the ALJ's "paragraph B" findings.

Reading the ALJ's decision holistically, the ALJ's choice not to include any mental limitations in Plaintiff's RFC is substantiated by Dr. Dennis' opinion and other substantial evidence in the record that the ALJ discussed at step two and in his RFC analysis (Tr. 30-31, 33-34).    Consequently, the ALJ provided sufficient information for the Court to understand why he chose not to include any mental limitations in Plaintiff's RFC.

Moreover, this Court has previously observed that district courts within the Sixth Circuit have held that mild limitations in each of the four areas of mental functioning do not require inclusion of any mental limitations in the claimant's RFC.    *Chastity M. v. Kijakazi*, No. 1:23-CV-00016-HBB, 2024 WL 102613, at *5 (W.D. Ky. Jan. 9, 2024); *Wardlow v. Kijakazi*, No. 3:20-CV-00828-RSE, 2022 WL 1748607, at *6 (W.D. Ky. May 31, 2022) (concluding that "ALJ Stanley was not required to include any mental limitations in Wardlow's RFC determination solely because he previously found she had mild limitations in certain areas of 'paragraph B'

13

functioning"); *see Caudill v. Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at *5-6 (S.D. Ohio Aug. 21, 2017) (finding that mental impairments which cause no more than mild limitation in three of the functional areas and no limitation in the fourth functional area supplies substantial evidence supporting ALJ's decision not to include mental limitations in plaintiff's RFC); *Little v. Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13-14 (S.D. Ohio Aug. 24, 2015) (concluding there was no error where the ALJ did not include RFC limitations to address findings of mild mental limitations); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *5-6 (S.D. Ohio Aug. 3, 2012) (finding substantial evidence supported the ALJ's determination that plaintiff's mental impairments were mild enough not to warrant specific RFC limitations).

Plaintiff acknowledges that mild limitations in each of the four areas of mental functioning do not require inclusion of mental limitations into the claimant's RFC (DN 18 PageID # 648-49) (citing *Caudill*, 2017 WL 3587217, at *6; *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017)).  But Plaintiff points out, "[c]ourts in this district have also found, however, that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment may constitute reversible error where the ALJ makes no mention of the claimant's mental impairments in the RFC analysis" (*Id.* at PageID # 649) (quoting *Shamsud-Din*, 2017 WL 3574694, at *6).  Consequently, Plaintiff reasons, "[a]n ALJ is thus obligated to explain why he omitted mental limitations from the RFC formulation" (*Id.*) (citing *Richardson v. Saul*, 511 F. Supp. 3d 791, 798-99 (E.D. Ky. 2021).

Plaintiff reliance on the above quoted sentence in *Shamsud-Din*, is misplaced.  2017 WL 3574694, at *6.  In the paragraph that follows, the *Shamsud-Din* court explained the rule does not

14

apply to the case because the ALJ clearly considered the plaintiff's depression in assessing her RFC and the plaintiff failed to meet her burden by identifying what additional functional limitations should have been added the RFC to accommodate for her depression. *Id.* at *7 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (observing that a claimant bears the burden of proving the existence and severity of limitations caused by her impairments through step four)). Here, this Court has also found the ALJ clearly considered Plaintiff's PTSD in assessing his RFC. Moreover, Plaintiff has failed to meet his burden because he has not indicated what additional functional limitations the ALJ should have assessed in the RFC to accommodate for his PTSD. Essentially, the *Shamsud-Din* court concluded due to harmless error, the ALJ's assessment of the plaintiff's RFC should not be disturbed. *Id.* The same reasoning would be equally applicable here.

Plaintiff's dependance on *Richardson* is also misplaced because it is factually distinguishable from the circumstances here. 511 F. Supp. 3d at 798-99. In *Richardson*, an ALJ found mild mental limitations at step two, but in the RFC discussion that ALJ gave "great weight to an opinion that concluded there were 'mild to moderate' mental limitations[.]" *Id.* at 799. The *Richardson* court focused on the ALJ's failure to explain these apparent contradictions and why all mental limitations were omitted from the RFC formulation. *Id.* Here, Plaintiff has not identified similar apparent contradictions. Moreover, for the reasons set forth above, this Court has concluded the ALJ provided sufficient information to understand why he chose not to include any mental limitations in Plaintiff's RFC.

Plaintiff's dependance on *Whittle v. Comm'r of Soc. Sec.* is equally unavailing because the court was left to speculate how the ALJ ultimately arrived at an RFC that included no mental

15

limitations. No. 4:24-CV-62-JEM, 2025 WL 2738469, at *4-6 (E.D. Tenn. Sep. 25, 2025). By contrast, here this Court has concluded the ALJ provided sufficient information to understand why he chose not to include any mental limitations in Plaintiff's RFC.

Plaintiff's reliance on *Johnson v. Comm'r of Soc. Sec.* is misguided because the ALJ assigned great weight to a consultative psychologist's opinion but failed to incorporate a key aspect of that opinion in the claimant's RFC. No. 3:20-CV-99, 2021 WL 5177818, at *3 (S.D. Ohio Nov. 8, 2021). The ALJ acknowledged the opinion was not adopted verbatim but maintained the "spirit" of the opinion was incorporated into the claimant's RFC. *Id.* The *Johnson* court, having found this explanation both inadequate and inaccurate, reversed and remanded the case to the Commissioner for further proceedings. *Id.* at *4. As Plaintiff has not identified similar contradictions in the ALJ's findings, *Johnson* is factually distinguishable and does not apply here.

Plaintiff's dependance on *Lindsey v. Comm'r of Soc. Sec.* is also factually distinguishable. No. 2:18-CV-18, 2018 WL 6557432, at * 5 (S.D. Ohio Nov. 30, 2018). Specifically, the *Lindsey* court found a "remand is required because the ALJ assigned significant weight to the opinions of the state-agency psychologists, which adopted the prior ALJ's mental limitation findings, but failed to adequately explain why certain limitations were altered when incorporated into Plaintiff's mental RFC." *Id.* at *4-5. Clearly, *Lindsey* does not apply here.

Plaintiff's reliance on *Ripley v. Comm'r of Soc. Sec.* is misplaced because it is also factually distinguishable from the circumstances here. 415 F. Supp. 3d 752, 766-67 (N.D. Ohio 2019). In *Ripley* the ALJ assigned great weight to the opinions of the state agency medical consultants but failed to include three of their important limitations in the claimant's RFC. *Id.* at 766. The *Ripley* court explained while there is no requirement to adopt the opinions verbatim, "the ALJ was

16

still required to explain why the opinions were not adopted as the RFC conflicted with them." *Id.* at 767. Clearly, *Ripley* does not apply here.

In sum, the above-mentioned cases cited by Plaintiff do not affect the Court's determination that the ALJ provided sufficient information to understand why he chose not to include any mental limitations in Plaintiff's RFC. As Plaintiff's RFC claim is without merit, the Court need not address his related challenge to the ALJ's finding at step five.

## IV.   CONCLUSION

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation modified). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. *Id.* After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and follows the applicable law. Therefore, Plaintiff is not entitled to relief with regard to his challenge.

## V.   ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

August 3, 2026

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:        Counsel